**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**LOURDES D. COLLADO,**

                                        **Plaintiff,**

        *- against -*

**MICHAEL J. ASTRUE, COMMISSIONER OF**
**SOCIAL SECURITY,**

                                        **Defendant.**[1]

**05 Civ. 3337 (KMK) (LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO:   THE HONORABLE KENNETH M. KARAS,**
        **UNITED STATES DISTRICT JUDGE**

        Supplemental Security Income claimant Plaintiff Lourdes Collado (herein, "Plaintiff" or

"Claimant") seeks judicial review of the Commissioner of Social Security's (herein, "Defendant"

or "Commissioner") final decision that she is not disabled and thus not entitled to supplemental

security income under Title XVI of the Social Security Act, 42 U.S.C. §1381, *et seq*.  See Docket

#1, Complaint (herein, "Comp.") at ¶¶14, 15.  Plaintiff seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).  The

parties to this action have filed cross-motions for judgment on the pleadings pursuant to FED. R.

CIV. P. 12(c), each contending that they are entitled to relief as a matter of law.  See Docket #10,

Plaintiff's Motion for Judgment on the Pleadings; see Docket #14, Commissioner's Motion for

Judgment on the Pleadings.  The Plaintiff contends that the Administrative Law Judge (herein,

"ALJ") who reviewed her claim for supplemental security income benefits erred by not affording

---

        [1]  Pursuant to FED. R. CIV. P. 25(d)(1), the name of the new Commissioner of Social
Security has been substituted for Jo Anne Barnhart who was the Commissioner of Social
Security at the time this action was filed.

1

her treating physician's diagnosis substantial weight, by improperly relying on the testimony of a vocational expert, by failing to develop the administrative record fully in light of the Plaintiff's *pro se* status during the administrative proceedings, and by erroneously evaluating the extent of the Plaintiff's physical and mental limitations under the applicable regulations.  See Docket #11, Plaintiff's Memorandum of Law (herein, "Pl's Mem.").  The Commissioner has cross-moved for an order affirming the ALJ's decision that the Plaintiff is not disabled and not entitled to an award of benefits due to the fact that she could make an adjustment to other available work in the national economy.  See Docket #15, Commissioner's Memorandum in Opposition to Plaintiff's Motion and in Support of Cross Motion (herein, "Comm. Mem.").

For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's motion for judgment on the pleadings should be granted and that the case should be remanded to the Commissioner for further proceedings.  Accordingly, I respectfully recommend that the Commissioner's cross-motion for an order affirming the ALJ's final decision denying Plaintiff benefits should be denied.

## **BACKGROUND**

A.   Prior Administrative Proceedings

Plaintiff filed an application for disability-based supplemental security income on July 10, 1997.  See Comp. at ¶6; see also Docket #7, Answer with Administrative Transcript (herein, "Tr.") 95.  In her application for benefits, Plaintiff claimed that she suffered from depression and was unable to engage in gainful employment.  Id.  Plaintiff additionally claimed that she suffered from "[m]uscular disease affecting my whole body," as a result of having polio when she was younger.  Tr. 114.  Plaintiff categorized her pain as "getting worse each day that [] passes," and

emphasized that she was "unable to perform the daily activities [or] any other type of work due to severe pains and [the] severity of my condition."  Tr. 125.

Plaintiff's initial claim for an award of  supplemental security income based upon her physical and mental disabilities was denied, Tr. 44-47, as was her petition for reconsideration, Tr. 50-53.  Plaintiff requested a hearing before an ALJ, Tr. 54, and a hearing was conducted before ALJ Sean Walsh on August 7, 2000, Tr. 60-63.  On February 9, 2001, the ALJ issued his decision denying Plaintiff's application for supplemental security income.  Tr. 29-37.  Plaintiff sought review of the ALJ's February 9, 2001, decision, and on July 11, 2001, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further consideration. Tr. 70-73.  A subsequent hearing was held before the ALJ on February 11, 2002, in which the Plaintiff proceeded *pro se*.  Tr. 942-968.[2]  On September 25, 2002, the ALJ issued his second decision denying the Plaintiff the requested supplemental security income payments.  Tr. 20-25. Plaintiff filed a second appeal to the Appeals Council in November of 2002, which was denied by the Appeals Council on February 10, 2005.  Tr. 8-11.  The February 10, 2005, denial of disability benefits became the Commissioner's final decision, and Plaintiff thereafter filed the instant action seeking judicial review of the Commissioner's final decision.  See Heckler v. Day, 467 U.S. 104, 106-07 (1984) (listing the administrative exhaustion process a claimant must follow prior to initiating a claim in federal court under 42 U.S.C. §405(g)).

_____

[2]  In her prior administrative proceeding, the Plaintiff was represented by Mr. Luis A. Lopez, a disability consultant.  Tr. 94, 370-371, 928.  Mr. Lopez withdrew from representing the Plaintiff after the ALJ issued his first decision denying Plaintiff's claim for benefits and he did not participate in the Plaintiff's second administrative hearing in February of 2002  Tr. 944-945. The Plaintiff's *pro se* status during the administrative proceedings before the ALJ upon remand is discussed infra.

3

B.      Plaintiff's Personal and Medical History

The following facts are drawn from the portions of the administrative record highlighted by the parties in their respective memoranda of law.

Plaintiff was born in the Dominican Republic on February 1, 1955, and was forty-two years old at the time she first filed for supplemental security income in 1997.  Tr. 95.  Plaintiff testified that she has an eighth grade education and that she has an understanding of English that is limited to speaking and understanding some words.  Tr. 948.  Plaintiff testified, however, that her knowledge and understanding of English does not allow her to converse in English and that she cannot read or write in English.  Tr. 948.  During the course of her administrative hearings, Plaintiff offered inconsistent answers about her ability to read and write in Spanish, her native language.  Compare Tr. 933-934 (Plaintiff explaining that she cannot read a Spanish newspaper), with, Tr. 948 (providing an affirmative response to the ALJ's question whether she could "read and write the Spanish language.").  Plaintiff participated in both of the administrative proceedings with the aide of an interpreter.  Tr. 928-929 (August 7, 2000, hearing before ALJ); Tr. 944 (February 11, 2002, hearing before ALJ).

Plaintiff was last employed as a sewing machine operator sewing buttons on shirts in 1992.  Tr. 931-932; 948-949.  Plaintiff ended this position of employment as a result of pain in her legs which she attributed to an earlier diagnosis of polio as a child.  Tr. 932.  Plaintiff testified that she had to remain seated all day as a sewing machine operator and that after a short while she was unable to use the pedals on the sewing machine because of a lack of strength in the muscles in her legs.  Tr. 932.  During her August 7, 2000, hearing, the Plaintiff testified that she could not walk more than one block, even with the assistance of a cane, and that she could not

stand for any measurable period of time or remain seated for more than two hours comfortably. Tr. 936.  Plaintiff also offered that she had problems with her memory and with her ability to concentrate, and that she experienced pain throughout her muscles during the course of her August 2000 hearing.  Tr. 936-937.  Plaintiff reemphasized during her subsequent administrative hearing held in February of 2002 that she still suffered from these physical and mental limitations and specified that she endured pain in her legs, arms, hands, shoulders, and back, and that these physical impairments prevented her from engaging in everyday activities on her own.  Tr. 956-959.

1.      Mental and Psychological Evaluations of Plaintiff [3]

Plaintiff received numerous mental health evaluations from her treating physicians and from several state agency consultative physicians.[4]

Plaintiff was seen by a doctor at Montefiore Medical Center on May 22, 1996, after

---

[3] Plaintiff seeks an award of supplemental security income based upon both physical and mental limitations.  Because the majority of the Plaintiff's challenge to the ALJ's decision focused on his assessment of her mental limitations, and because the undersigned recommends that the ALJ's decision in this regard is not support by substantial evidence, the undersigned has only provided a review of Plaintiff's mental health treatment.

[4] In his Memorandum of Law, the Commissioner contends that the Court should not consider evidence in the administrative record that predates the Plaintiff's disability period, which the Commissioner calculates as commencing on September 10, 1997, which is three months after the Plaintiff filed her application for disability benefits.  See Comm. Mem. at pp. 4-5 and p. 22 n.6; Tr. 98 (Plaintiff's signature on initial application for supplemental security income dated July 10, 1997).  The Commissioner, however, has not explained why he identified this later date as the start of the Plaintiff's disability period.  It appears to the undersigned that the disability period should include the twelve months prior to the Plaintiff's July, 1997, benefits application, and that all of the information contained in the administrative record pertaining to the Plaintiff's mental health treatment that was produced from July, 1996, onward is within the appropriate scope of information the ALJ and this Court should consider in connection with Plaintiff's application for benefits.  See Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citing, inter alia, 20 C.F.R. §416.912(d)).

complaining about visual and auditory hallucinations.  Tr. 231-236.[5]  At the time of her intake,

Plaintiff explained that she wanted to see a psychiatrist about depression she claimed she had

endured since 1990.  Plaintiff stated that she had thought about suicide for approximately one

week before coming to Montefiore, but that she had never attempted suicide and was feeling

better after thinking about her new grandchild.  Tr. 231.  Plaintiff also recounted that she recently

believed she saw a saint deliver her a message about the use of herbal medicine for her daughter,

and that she suffered from loneliness, a reduction in sleep and appetite, and a lack of social

supports.  Tr. 231.  Plaintiff returned to Montefiore Medical Center on three additional occasions

during February, March, and April of 1998.  Tr. 274, 271, 269.  Plaintiff complained of

continued mental health limitations during each visit, including nervousness, a lack of sleep, and

temporary confusion and disorientation.  Tr. 274, 271, 269.

Plaintiff received comprehensive mental health treatment from the Fordham-Tremont

Community Mental Health Center between July, 1998, and April, 2001.  Tr. 378-510; 752-757.

During her initial intake screening in July of 1998, Plaintiff complained of visual hallucinations,

sleep disturbances, previous suicidal ideation, and auditory hallucinations commanding her "to

inject people with urine in the neck."  Tr. 378.  Plaintiff also noted that she was overly suspicious

of people on the street and was easily frightened.  Tr. 379.  At the time of her intake, Plaintiff had

neither suffered from suicidal thoughts or acts nor endured any period of drug or alcohol abuse

within the previous thirty days.  Tr. 380-A.  Plaintiff received a psychiatric evaluation performed

by Dr. Federico Colon on August 10, 1998.  Tr. 392-394.  Dr. Colon diagnosed the Plaintiff as

---

[5]  Under the applicable administrative regulations, this information is outside of the
period the ALJ was required to develop and this information is only presented herein as
background to the Plaintiff's complaints of mental and emotional limitations.

suffering from major depression with psychotic features based upon the Plaintiff's impaired memory, depressed mood and constricted affect, and previous auditory hallucinations.  Tr. 393-394.  Dr. Colon prescribed the Plaintiff several antipsychotic, depression and anxiety related medications.  Tr. 394.

Plaintiff met regularly with a therapist at the Fordham-Tremont Community Health Center from August, 1998, until April, 2001.  Plaintiff's comprehensive treatment plan created in August of 1998 noted her depressive symptoms, including a lack of interest, lethargy, insomnia, and tearfulness.  Tr. 395-A.  Plaintiff's treatment plan reviews, which were conducted four times between August of 1998 and August of 1999, each contained similar notations of continued depressive symptoms, including lethargy and insomnia.  Tr. 395-A, 399, 404, 409, 414.  Each treatment plan review also delineated specific objectives the Plaintiff was to work toward in the course of her treatment, including improving upon the number of hours she slept each night, continuing to perform household chores when physically able, continuing to take her medications as prescribed, and attempting to go outside for a walk or shopping at least once a week.  Tr. 395-A, 399, 404, 409, 414.

During the first year of her treatment at Fordham-Tremont, Plaintiff was admitted to Bronx-Lebanon Hospital Center after overdosing on prescription pain medication.  Tr. 519-524.  The Bronx-Lebanon staff noted that the Plaintiff was "severely depressed with constricted mood, crying at times, preoccupied with financial problems, confused, tearful" and suffered from "psychomotor retardation with low speech and auditory hallucinations and suicidal ideations" at the time of her admission.  Tr. 516.  Plaintiff remained hospitalized at Bronx-Lebanon Hospital from October 3, 1999, until October 15, 1999.  Tr. 515-518.  The nurses' bedside notes reference

7

that although the Plaintiff endured occasional periods of depressive symptoms during her twelve

days of hospitalization, Tr. 532-563, the Plaintiff also exhibited steady signs of improvement

toward the end of her hospitalization, including compliance with her medication and increased

socialization with fellow patients, Tr. 517.  Upon her discharge from Bronx-Lebanon Hospital,

Plaintiff was instructed to return to the Fordham-Tremont Community Health Center for regular

mental health evaluations and treatment.  Tr. 518.

Plaintiff's continued mental health treatment at Fordham-Tremont after her October 1999

hospitalization focused on her compliance with her prescription medication regimen.  Tr. 419.

The treatment plan reviews conducted between November of 1999 and August of 2000 each note

this as an objective of her treatment and each note also contains references to her previously

identified depression-related symptoms, including lethargy and sadness.  Tr. 418-429.  Certain

treatment plan reviews reference that the Plaintiff experienced a partial remission of her

depression-related symptoms.  See, e.g., Tr. 422, 425.  The administrative record also contains

two years worth of progress notes authored by the Plaintiff's therapist and psychiatrist at

Fordham-Tremont.  Tr. 430-494.  These progress notes contain observations about the Plaintiff

taken during individual therapy sessions and during group therapy sessions.  Although some of

the notes reference the Plaintiff experiencing improved mental and physical health conditions,

some of the progress notes reference the Plaintiff lodging complaints of chronic muscle pain and

fatigue, depression, apathy, lethargy, sleeplessness, nervousness, and auditory hallucinations.

See, e.g., Tr. 480, 483, 493.

Plaintiff was examined by several consultative psychiatrists in connection with her claim

of a mental disability.  The first consultative exam was performed by Dr. Gerardo Tapia on

November 2, 1998.  Dr. Tapia concluded that the Plaintiff "has a good ability to understand, carry out and remember instructions, and a fair ability to respond appropriately to supervision and coworkers in a work setting."  Tr. 279.  He concluded that the Plaintiff was capable of managing her own finances and that she did not suffer from major depression with psychotic features as the psychiatrist at the Fordham-Tremont Community Mental Health Center had previously diagnosed in August of 1998.  Tr. 279; 395-A.

The Plaintiff was also personally evaluated by consultative psychiatrist Dr. Robert Cicarell on August 12, 1999.  Tr. 328-330.  Differing from Dr. Tapia's assessment, Dr. Cicarell concluded that the Plaintiff suffered from certain depressive symptoms, such as indifference to external events, and that she experienced depression or depressive symptoms more often than not.  Tr. 329.  Dr. Ciracell also observed that the Plaintiff could not recall her own social security number, that she exhibited signs of impaired short term memory, and that she demonstrated an "overall intellectual functioning [that] is below average" at the time of the evaluation.  Tr. 329.  Contrary to Dr. Tapia, Dr. Ciracell concluded that the Plaintiff was incapable of managing her own funds because of her inability to perform simple calculations, and that she possessed "a limited ability to understand, carry out and remember instructions in a work setting."  Tr. 329-330.

Two additional consultative psychiatrists, Drs. Peter Kudler and P. Mason, performed psychiatric reviews only of the Plaintiff's documentary medical history in November of 1998 and August of 1999, respectively.  Tr. 339-347 (psychiatric review performed by Dr. Kudler); Tr. 348-360 (psychiatric review performed by Dr. Mason).  Dr. Kudler concluded that although the Plaintiff's medical history substantiated a finding that the Plaintiff had a depressive syndrome

characterized by a pervasive loss of interest, psychomotor agitation or retardation, decreased

energy, and feelings of guilt or worthlessness, Tr. 342, these limitations did not amount to a

severe limitation because they only created slight or seldom impacts upon that Plaintiff's daily

functioning, Tr. 346.

Differing from Dr. Kudler, Dr. Mason concluded that a mental residual functional

capacity (herein, "RFC") assessment had to be performed on the Plaintiff because the Plaintiff

suffered from a severe impairment that did not meet or equal an impairment listed in Appendix

One of 20 C.F.R. §404. Tr. 352. Dr. Mason determined that the Plaintiff suffered from a

depressive syndrome characterized by a pervasive loss of interest in almost all activities, sleep

disturbance, decreased energy, difficulty in concentrating or thinking, and a history of thoughts of

suicide. Tr. 355. Similar to Dr. Kudler, however, Dr. Mason hypothesized that these

impairments only had a slight or seldom impact on the Plaintiff. Tr. 359. In accord with these

findings, Dr. Mason found in his mental RFC of the Plaintiff that Plaintiff's daily functioning

either was not significantly limited or was only moderately limited by her mental impairments

and that she retained the ability to perform "simple low stress work with little interpersonal

contact." Tr. 350.

C.    ALJ's Prior Decisions

Upon receiving notice that her application for disability benefits was denied, the Plaintiff

requested a hearing before an administrative law judge. Tr. 68. A hearing was held before the

ALJ on August 7, 2000. Tr. 926-941. As noted above, Plaintiff was aided by the assistance of a

translator and by the assistance of Mr. Luis Lopez, a private investigator and disability consultant

authorized to practice before the Social Security Administration, during the August, 2000,

10

hearing.  Tr. 928 (transcript of first administrative hearing acknowledging the presence of Mr.

Lopez); Tr. 634-635 (agreement signed by Plaintiff to retain assistance of Mr. Lopez).

The ALJ issued his first decision finding that the Plaintiff was not disabled and thus not

entitled to disability benefits on February 9, 2001.  Tr. 32-37.  The ALJ concluded that the

Plaintiff could perform her past work – that of a sewing machine operator – because, in his

opinion, she retained the ability to perform light exertional level work, which included her past

performed work.  Tr. 33.  On July 11, 2001, the Appeals Council reversed the initial decision of

the ALJ and remanded the case for further reconsideration.  Tr. 71-73.  The Appeals Council

concluded that the ALJ did not adequately explain why he did not afford controlling weight to

the opinions of the Plaintiff's treating physician, Dr. Rodriguez-Betancourt, regarding her

physical limitations.  Tr. 71.  The Appeals Council directed the ALJ to consider the opinions of

Dr. Rogriguez-Betancourt vis-a-vis the opinions of the other state agency consultative physicians,

and also directed the ALJ to consider the extent of the Plaintiff's mental impairments and to

obtain the expertise of a vocational expert in the event that he concluded that the Plaintiff was

unable to perform her previous work as a sewing machine operator.  Tr. 72.

The ALJ held a subsequent hearing on February 11, 2002.  Tr. 942-968.  Although the

Plaintiff was again assisted by an interpreter in the second administrative hearing, Tr. 944, the

Plaintiff did not have the assistance of Mr. Lopez, the disability representative who assisted her

during her first administrative hearing, Tr. 944.  The ALJ inquired into whether the Plaintiff

wished to proceed without the assistance of a third party or if she wanted more time to secure a

representative.  Tr. 944-945.  The Plaintiff explained to the ALJ that Mr. Lopez "got off the case"

after she was first denied disability benefits and that she did not have time to secure an additional

representative after her case was remanded for further consideration. Tr. 944-945. The Plaintiff acquiesced to proceeding without the assistance of a representative. Tr. 945.

The ALJ issued his second decision denying the Plaintiff disability benefits on September 25, 2002. Tr. 20-25. In his decision, the ALJ concluded that the Plaintiff suffered from severe physical impairments based upon her fibromyalgia, depression, cervical herniated disc and left shoulder impairment. Tr. 23. The ALJ concluded, however, that these limitations did not meet any of the criteria enumerated in Appendix One of 20 C.F.R. §404 and that Plaintiff was not automatically entitled to disability benefits. Tr. 23. The ALJ then concluded that the Plaintiff could not perform her past previous work as a sewing machine operator, but nevertheless concluded that the Plaintiff retained the residual function and ability to perform other work in the national community based upon the opinion and analysis offered by a vocational expert, Ms. Edna Clark. The ALJ thus concluded that the Plaintiff was not disabled because she could have obtained other work that was available in the national community and that she was not entitled to disability benefits. Tr. 24.

Plaintiff filed a second appeal with the Appeals Council challenging the ALJ's September 25, 2002, determination that she was not disabled. On February 10, 2005, the Appeals Council upheld the ALJ's decision denying her disability benefits, which became the Commissioner's final determination. Tr. 8-11. Plaintiff thereafter commenced this timely action seeking judicial review of the Commissioner's final decision denying her disability benefits.

## DISCUSSION

A.   Standard of Review under 42 U.S.C. §405(g)

Pursuant to 42 U.S.C. §405(g), a federal district court has the "power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

The court's review of an ALJ's decision to deny disability benefits is twofold.  First, the court

must ensure that the ALJ employed the proper legal standards, and second, the court must

confirm that the ALJ's factual findings are supported by substantial evidence.  See 42 U.S.C.

§405(g); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  The Supreme Court has defined

substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Pratts v. Chater, 94 F.3d 34,

37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  In conducting this

substantial evidence review, the district court should not substitute its own independent judgment

of the administrative record for that of the ALJ, "[e]ven if the administrative record supports

disparate findings, [as] the ALJ's factual determinations must be accepted as conclusive."

Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997).  Although the Social Security Act "is a

remedial statute that must be liberally applied," Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir.

1990) (quotation omitted), the role of the district court in such cases is circumscribed because of

the degree of deference that must be extended to the ALJ's factual findings, provided that such

findings are supported by substantial evidence, Valente v. Sec'y of Health and Human Servs.,

733 F.2d 1037, 1041 (2d Cir. 1984).

     Both parties to this action have moved for judgment on the pleadings pursuant to FED. R.

CIV. P. 12(c).  See Docket #10, Plaintiff's Motion for Judgment on the Pleadings; Docket #14,

Commissioner's Cross Motion for Judgment on the Pleadings.  The standard of review for a Rule

12(c) motion for judgment on the pleadings is the same as the standard of review for a Rule

12(b)(6) motion to dismiss for failure to state a claim.  See Cleveland v. Caplaw Enter., 448 F.3d

518, 521 (2d Cir. 2006).  When a Rule 12(c) motion is filed in an action seeking judicial review

of the Commissioner of Social Security's final decision, the Court must consider the legal

sufficiency of the moving party's assertion that the ALJ's decision either should or should not be

affirmed as a matter of law.  See, e.g., Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)

(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Sellers v. M.C. Floor Crafters, Inc., 842

F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate . . . where a judgment

on the merits is possible merely by considering the contents of the pleadings."); Arteaga v.

Astrue, 06 Civ. 1244 (PKC), 2007 WL 2402871, at *12 (S.D.N.Y. Aug. 15, 2007) (applying Rule

12(c) standard of review to judicial review of denial of social security benefits).

B.      Plaintiff's Right to Notice of a Representative or an Attorney

       A Social Security claimant has both a statutory and a regulatory right to receive notice

that he or she may obtain the assistance of counsel or that of a non-attorney representative during

the administrative review of his or her application for an award of benefits.  See 42 U.S.C.

§406(c); 20 C.F.R. §404.1706; 20 C.F.R. §416.1506.  This right is limited to putting the claimant

on notice that he or she may retain, or otherwise obtain, the assistance of either an attorney or a

non-attorney representative.  Id.  Like the constitutional right to counsel, a claimant's right to

retain either counsel or a representative may be waived by the claimant if the claimant makes a

knowing, willing, and voluntary waiver of this right.  See, e.g., Alvarez v. Bowen, 704 F. Supp.

49, 52 (S.D.N.Y. 1989).  Although some District Courts in this Circuit had prescribed a

heightened litany an ALJ had to comply with in order to establish that a claimant validly waived

his or her right to representation, see, e.g., Frank v. Chater, 924 F. Supp. 416 (E.D.N.Y. 1996),

the Second Circuit recently held that this heightened litany is improper and that it has been displaced by the streamlined statutory criteria set forth in 42 U.S.C. §406(c) and its accompanying regulations, see Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507-08 (2d Cir. 2009).  Under the Lamay standard, an ALJ need only ensure (1) that the claimant received advance written notice about his or her right to obtain counsel or representation for the purposes of the administrative review process; (2) that the notification provided to the claimant adequately informed the claimant of the availability of free legal services to assist him or her with the administrative review process; and (3) that the claimant acknowledges these rights during the administrative hearing and adequately waives such rights if he or she elects to proceed *pro se*. See id. at 507 (citing, *inter alia*, Robinson v. Sec'y of Health & Human Servs., 733 F.2d 255, 257 (2d Cir. 1984)).

Plaintiff submits that the ALJ's efforts to ensure that she was aware of her right to counsel at the second administrative hearing held in September, 2002, was insufficient, and that this error amplifies the other errors the ALJ committed during his consideration of her application for benefits.  See Pl's Mem. at pp. 17-18.  Errors of this kind do not supply an independent basis to remand a proceeding to the Commissioner for further consideration.  See Alvarez, 704 F. Supp. at 52 (noting that a plaintiff must establish both that he or she did not knowingly waive his or her right to counsel and that he or she was prejudiced by this failure). When such an error augments a separate legal error committed by the ALJ and prejudices the claimant, however, the lack of a valid waiver of representation can supply a reason to remand the proceeding to the Commissioner for further consideration.  Id.; see also Leonard v. Comm'r of Soc. Sec., 05 CV 1084 (FJS/GHL), 2008 WL 3285947, at *7 (N.D.N.Y. Aug. 7, 2008)

15

(observing that the lack of representation, coupled with other legal error, may substantiate remanding a proceeding to the Commissioner).  For the following reasons, I respectfully recommend that the ALJ failed to secure the Plaintiff's knowing waiver of her right to representation and that this error compounds the other deficiencies identified below and supports remanding this case to the Commissioner.

This case presents a slight variation on the normal sequence of events concerning a claimant's waiver of his or her right to representation under 42 U.S.C. §406(c).  Plaintiff was initially represented by a non-attorney representative during her first administrative hearing before the ALJ in August, 2000.  Tr. 32.  Following the ALJ's initial denial of Plaintiff's application for benefits, Plaintiff's disability representative withdrew from representing the Plaintiff.  Tr. 944.  Plaintiff appears to have filed her appeal to the Appeals Council *pro se,* and Plaintiff continued to proceed *pro se* following the Appeals Council's remand of Plaintiff's application to the ALJ for further consideration.  Tr. 944-945.  Thus, while there appears to be no dispute that the Plaintiff received written notification of her right to retain a representative during the first administrative review process, the undersigned has concerns with the process utilized by the ALJ during the second administrative hearing held on February 11, 2002, regarding Plaintiff's waiver of this right.  The ALJ held the following colloquy with the Plaintiff:

ALJ:            Okay.  Senora Collado, do you have a representative or an attorney?

Claimant:      No, I do not have an attorney.

ALJ:            Luis Lopez?

Claimant:      He was at the hearing that he did my cases [sic].  Since he lost them he got off the case.

16

| ALJ: | Okay. Have you made efforts to get someone else to replace him? |
| Claimant: | Since the case came right away, after I lost it, the hearing came right away, I didn't have the time. |
| ALJ: | Okay. Do you need more time to try to get an attorney or do you wish to go forward today without an attorney? |
| Claimant: | No, it's fine, I would like to go on. |
| ALJ: | Okay. I will accept that as a waiver of your right to representation and we will proceed here. . . . |

Tr. 944-945. In his second decision denying Plaintiff's application for benefits, the ALJ generously classified this colloquy as establishing that "[s]he [the Plaintiff] elected to proceed with the hearing without representation, after being duly notified of her right to such." Tr. 20. The transcript of this proceeding, respectfully, does not establish that the ALJ orally notified the claimant of her right to retain counsel or a representative for the purposes of the hearing. The limited colloquy between the ALJ and the Plaintiff further fails to establish that the ALJ satisfactorily considered whether Plaintiff knowingly waived her right to representation during the hearing.

The Second Circuit reaffirmed in Lamay that Social Security claimants must be informed of their statutory and regulatory rights to retain representation and that such rights must be acknowledged and waived knowingly by claimants before the ALJ during the hearing. See 562 F.3d at 507. Although Plaintiff received written notification of her right to representation early in the administrative review process, Tr. 44-47 (initial notification of disapproved claim dated December 2, 1998), the record is sparse as to what additional information Plaintiff received about

17

her right to representation after the Appeals Council remanded her case to the ALJ for further consideration.  A listing of organizations that represent claimants in Social Security proceedings was included in the information packet the ALJ sent to the Plaintiff prior to her second hearing. Tr. 81-82.  This listing, however, which is written in Spanish, only appears to list such organizations and does not otherwise inform the Plaintiff that she has a right to the assistance of a representative or that such representation may be provided by certain legal services organizations free of charge.  See 42 U.S.C. §406(c); 20 C.F.R. §416.1506.  Even assuming *arguendo* that this documentation sufficiently notified Plaintiff of her right to obtain representation in writing, the colloquy between the ALJ and the Plaintiff is devoid of any discussion of Plaintiff's right to obtain representation save for the ALJ's decision to "accept [the Plaintiff's statement that she would like to go on] as a waiver of [her] right to representation . . . ."  Tr. 945.  The ALJ did not inquire into whether Plaintiff understood that she could retain representation free of charge or whether she was electing to proceed *pro se* willingly.  Although the administrative record contains some information concerning the Plaintiff's statutory and regulatory right to representation, Plaintiff's limited education, her alleged mental impairments, and her limited command of the English language, at a minimum, required the ALJ to perform more than a perfunctory inquiry into whether Plaintiff "wish[ed] to go forward [] without an attorney[.]"  Tr. 945; see also Bula v. Comm'r of Soc. Sec., 06 CV 1325 (GLS/GJD), 2009 WL 890665, at *7-8 (N.D.N.Y. Mar. 30, 2009) (Report and Recommendation adopted by District Judge).[6]

_____

[6]  Although Bula predates the Circuit's recent decision in Lamay, the Bula court's opinion regarding the ALJ's limited discussion of the plaintiff's right to obtain representation during the administrative hearing remains an accurate statement of the law.  See 2009 WL 890665, at *7

18

Respectfully, the limited inquiry conducted by the ALJ into the Plaintiff's election to proceed *pro se* does not establish that Plaintiff undertook such self representation knowingly. This error compounds the other errors discussed herein and supports the instant recommendation that this case should be remanded to the Commissioner for further development of the administrative record.  See Alvarez, 704 F. Supp. at 52 (explaining how the lack of representation amplified the ALJ's deficient development of the administrative record); Bula, 2009 WL 890665, at *7 (noting that Plaintiff's limited English ability militated in favor of the ALJ discussing the Plaintiff's right to representation in more complete detail in order to establish a valid waiver of such right); Leonard, 2008 WL 3285947, at *8 (noting that Plaintiff's limited schooling favored a complete discussion of the waiver of the right to representation).

C.      ALJ's Duty to Develop the Record Regarding Plaintiff's Mental Limitations

An ALJ is under the affirmative duty to develop the administrative record regardless of whether the Plaintiff is represented by counsel at an administrative hearing.  See Pratts, 94 F.3d at 37.  This independent duty is heightened when the Plaintiff proceeds *pro se*.  See Lamay, 562 F.3d at 509 (citing Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)).  Among the ALJ's responsibilities are his or her obligations (1) to ensure that there are no gaps in the administrative record; (2) to review all of the medical evidence and to consider the opinions of treating physicians with additional care; and (3) to support his or her decision denying a claimant benefits with substantial evidence.  See Burgess v. Astrue, 537 F.3d 117, 128-29 (2d Cir. 2008).  Upon

---

(continued from previous page . . .)
("According to the regulations the ALJ must advise the plaintiff that [he or] she has the right to a representative.") (citing 20 C.F.R. §404.916(b)(2)); see also Lamay, 562 F.3d at 507 (noting that "at the hearing itself, 'the ALJ must ensure that the claimant is aware of [his or her] right [to counsel].' ") (quoting Robinson, 733 F.2d at 257).

review of the ALJ's decision, the undersigned respectfully recommends that the ALJ's decision

denying Plaintiff disability benefits is predicated upon incomplete information and that his

decision is not support by substantial evidence.[7]

      Disability claims predicated upon mental limitations and impairments are evaluated under

a separate set of regulations.  See 20 C.F.R. §404.1520a; 20 C.F.R. §416.920a; Shatraw v.

Astrue, 04 CV 510 (NAM/RFT), 2008 WL 4517811, at *12 (N.D.N.Y. Sept. 30, 2008).  An ALJ

is charged the responsibility of conducting a unique function-by-function analysis of the

Plaintiff's mental residual functional capacity when considering whether the Plaintiff suffers

from a mental disability within the meaning of the Social Security Act.  See Rosado v. Barnhart,

290 F. Supp. 2d 431, 437 (S.D.N.Y. 2003).  Such an assessment includes, inter alia,

consideration of the Plaintiff's alleged limitations as to his or her (1) daily activities; (2) social

functioning; (3) concentration, persistence or pace; and (4) duration of any episodes of

decompensation, which is defined as the deterioration of existing defenses leading to the

exacerbation of pathological behavior.  Id.  Although an ALJ is not required to conduct an

explicit function-by-function analysis of a claimant's mental RFC in his or her written findings

under the case law of the Southern District of New York, an ALJ's assessment of a claimant's

mental RFC should contain as much detail as possible.  See Rockwood v. Astrue, 06 CV 1471

(NAM), – F. Supp. 2d – , 2009 WL 1212487, at *22 (N.D.N.Y. April 30, 2009) (noting that

courts in Southern District of New York do not mandate that an ALJ enumerate the function-by-

function mental RFC in his or her written decision).  The ALJ's mental RFC findings, however,

---

      [7] The instant Report and Recommendation only focuses on the development of Plaintiff's
mental disability as argued persuasively by Plaintiff's counsel.  See Pl's Mem. at pp. 18-20, 22-
23.

must be supported by substantial evidence.

In the course of rendering his decision on Plaintiff's application, the ALJ relied upon the only mental RFC of the Plaintiff, which was a document-based review conducted by one of the consultative state agency physicians in August, 1999.  Tr. 339-360 (report of consulative physician); Tr. 22 (ALJ's decision on Plaintiff's mental RFC).  Dr. Mason concluded that, based upon Plaintiff's documentary medical history alone, the Plaintiff only suffered from mild mental limitations.  Tr. 359.  As noted, Dr. Mason's mental RFC serves as the ALJ's exclusive basis for his findings regarding the Plaintiff's mental limitations and impairments.  Tr. 22.

I respectfully recommend that the ALJ's selective reliance upon this limited review of Plaintiff's documentary medical history fails to establish that his conclusions about Plaintiff's mental RFC are supported by substantial evidence.  First, the mental RFC relied upon by the ALJ was a documentary review of Plaintiff's medical history conducted as of August, 1999.  The ALJ relied upon this constricted review of Plaintiff's mental functioning in both his July, 2001, and September, 2002, decisions.[8]  Although an ALJ may rely upon the opinions of consultative physicians in determining whether a claimant is disabled, see Legg v. Astrue, 06 CV 167 (VEB), 2008 WL 2323403, at *12 (N.D.N.Y. June 2, 2008), and the ALJ need not obtain an RFC from a treating physician, id., an ALJ may not rely upon the opinion of a consultative physician and exclude or omit the opinion of a treating physician without explanation, id.; see also Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999). The record in this case demonstrates that the ALJ engaged in such selective reliance upon the limited conclusions of the consultative physician

_____

[8]  Most of the ALJ's September, 2002, decision is identical to his July, 2001, decision, except for one of the additional areas of consideration he was directed to perform by the Appeals Council upon remand.

without discussion or justification for discrediting or omitting the opinions of Plaintiff's treating

mental health sources.  Although the ALJ obtained copious notes from treating physicians

detailing Plaintiff's psychological history and her extensive mental health treatment, the ALJ

based his mental RFC determination exclusively upon the lone document-based review of the

Plaintiff's mental limitations completed by one of the retained consultative physician in 1999.

Tr. 23.  "The duty to develop a full record and assist a pro se plaintiff compels the ALJ to move

beyond pro forma compliance with the treating physician rule and to obtain from the treating

source expert opinions as to the nature and severity of the claimed disability."  Peed v. Sullivan,

778 F. Supp. 1241, 1246 (E.D.N.Y. 1991); see also Pl's Mem. at p. 23.  There is no dispute that

the ALJ complied with a portion of his responsibility to obtain the Plaintiff's medical records and

documents from her treating physicians; the ALJ, however, must consider such information in

the course of rendering his decision and offer a reason for declining to rely upon the opinions of a

treating physician.  See Peed, 778 F. Supp. at 1246; Rosado, 290 F. Supp. 2d at 438.  The ALJ's

decision in this case omits such a rationale.

     Additionally, if the ALJ had reason to disbelieve the information supplied by some of the

Plaintiffs' treating sources, the regulations charge the ALJ with the affirmative responsibility of

explaining why he or she discredited such information.  See Snell, 177 F.3d at 133-34.  I

respectfully recommend, however, that the ALJ failed to explain why he did not extend any

controlling weight to the Plaintiff's treating mental health sources.  The ALJ repeatedly stated in

a conclusory fashion in his decision that the Plaintiff exhibited "no evidence of psychotic

features" and that she had "no psychotic symptoms."  Tr. 22.  The ALJ also stated that as of

August 12, 1999 – the date Dr. Kudler performed the document-based consultative mental RFC

exclusively relied upon by the ALJ – "[t]here was no history of psychiatric hospitalization."  Tr.

22.  Plaintiff, however, was psychiatrically hospitalized in October, 1999, for twelve days after

overdosing on prescription pain medication.  Tr. 515-524.  In October, 1999, Plaintiff exhibited

signs of "severe[] depress[ion] with constricted mood, crying at times, . . . confused . . . [and

suffering from] psychomotor retardation with low speech and auditory hallucinations and

suicidal ideations . . . ."  Tr. 516.  None of this information is reflected in the document-based

mental RFC the ALJ relied upon because the mental RFC predated Plaintiff's hospitalization.

Moreover, the ALJ only extended passing recognition to the fact that Plaintiff was hospitalized –

"There was one psychiatric hospitalization in October 1999.  She was released in stable condition

with no apparent follow-up treatment."  Tr. 22.  Given Plaintiff's mental health history and her

continued complaints of mental health problems after her hospitalization, including lethargy,

apathy, and a tendency to want to overdose on pain medication, the ALJ's selective reliance upon

older information produces significant gaps in the administrative record that undermine the

ALJ's determination that the Plaintiff was not disabled.

The Commissioner's own memorandum of law further elucidates the inconsistencies

between the ALJ's terse conclusions that the Plaintiff never exhibited psychotic features and the

evidence in the record.  Although the ALJ repeatedly stated in his findings that the Plaintiff "had

no psychotic features," Tr. 22, the *Commissioner* notes "When evaluated in November 1999, Dr.

Renzallo diagnosed major depressive disorder with psychotic features," "When evaluated again

by Dr. Renzello in February 2000, major depressive disorder with psychotic features was again

diagnosed," and "In August 2000, plaintiff was again noted to have a depressed mood with

psychotic features," see Comm. Mem. at p. 12.  Although Plaintiff's diagnoses varied between

depressed and improving, the ALJ's repeated *ipse dixit* that the Plaintiff exhibited no psychotic features in late 1998 and early 1999 is undermined by the Commissioner's own citation to evidence in the record concerning the Plaintiff's psychotic features and symptoms in late 1999 and early 2000.

The Commissioner urges that the Court can "glean the rationale of [the] ALJ's decision," and that the Court should affirm the ALJ's decision on this basis.  See Comm. Mem. at p. 23. Although the Court may affirm a denial of benefits based upon a holistic review of an ALJ's decision, see Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983), the Court cannot "glean" the rationale of an ALJ's decision either when there are significant gaps in the record or when the opinions of treating physicians are omitted or relegated to a few short sentences, id.; see also Burgess, 537 F.3d at 128 ("[A court] may not properly 'affirm an administrative action on grounds different than those considered by the agency.' ").  Additionally, an ALJ cannot rely upon the absence of information in the course of rendering his or her decision.  See Sanchez v. Barnhart, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004); but see Tr. 22 ("[Plaintiff] was released in stable condition with *no apparent follow-up treatment*.") (emphasis added).  The ALJ's decision assessing Plaintiff's mental health impairments is predicated almost exclusively upon a single document-based assessment of the Plaintiff's mental health condition prior to her October, 1999, hospitalization.  The ALJ's reliance upon this unseasonable information as the only basis for his decision calls into question the evidentiary sufficiency of his decision.  These omissions are further exacerbated by the absence of a representative or attorney; counsel could have made further inquiry into Plaintiff's mental health treatment after Plaintiff's October, 1999, hospitalization and could have elicited the substance of such treatment during the course of the

24

hearing.  See, e.g., Tr. 959. (limited discussion between ALJ and Plaintiff regarding Plaintiff's

mental health treatment at the time of the hearing).  No such information, however, was

propounded during the hearing even though the severity of the Plaintiff's mental health

limitations was highlighted by the Appeals Council as one of the grounds the ALJ was supposed

to develop upon remand.  Tr. 72 (Appeals Council's delineation of issues ALJ should consider

upon remand).

D.      ALJ's Credibility Determination

        Lastly, the undersigned wishes to note that the ALJ's decision to disregard the Plaintiff's

subjective complaints of pain and his decision to render an adverse credibility determination,

along with the Commissioner's Memorandum of Law on this point, each appear to be

unsupported.  See Tr. 22 ("[Plaintiff's] statements regarding the degree of her functional

limitations are not fully credible."); Comm. Mem. at p. 27.  Credibility assessments, although

within the province of the ALJ, must be supported by substantial evidence.  See Tavarez v.

Barnhart, 124 Fed. Appx. 48, 51 (2d Cir. 2005) (citing Aponte. v. Sec'y, Dep't of Health &

Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  In both of his written decisions, however, the

ALJ simply declared that the Plaintiff's complaints of pain and her asserted functional limitations

were not credible.  Tr. 22, 35.  The ALJ, however, offered no basis in either of his opinions to

support this assessment.  In his conclusion section, the ALJ stated simply that the Plaintiff's

"ability to attend to activities of daily living" supported a finding of not disabled.  Tr. 24, 37.

Plaintiff testified during both of her administrative hearings, however, that she only performed

limited daily activities and that the activities she did perform were conducted with the assistance

of a friend or relative.  Tr. 946 (Plaintiff's statement that she does not care for her grandchildren);

Tr. 956 (Plaintiff's statements regarding her limited ability to walk and sit); Tr. 959 (Plaintiff's

statements that she does not do laundry or do shopping).

In Opposition, the Commissioner offers a series of *post hoc* rationales for the ALJ's

credibility finding – none of which the ALJ referenced in either of his written decisions –

including the fact that Plaintiff did not have her cane with her at the time of her second hearing,

that she cooked and shopped when possible, and that she traveled to both hearings by taxi.  See

Comm. Mem. at p. 27.  This latter assertion is particularly vexing in light of the fact that Plaintiff

was required to appear at her hearing and that her failure to appear at the hearing without "good

cause" could have resulted in the ALJ "dismiss[ing] [the] request for hearing . . . without giving

[the Plaintiff] further notice."  Tr. 60.  Using Plaintiff's mandatory attendance at the hearing – as

opposed to her demeanor or her conduct during the hearing – as some evidence of her ability to

conduct her daily affairs is unfortunate and should not be countenanced by this Court.  See

Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (noting that limited weight may be afforded to

observations of plaintiff's demeanor during an administrative hearing) (citing 20 C.F.R.

§416.929(c)(3)).  Additionally, the rationales supplied by the Commissioner are not properly

before this Court because none of them were offered by the ALJ as the reasons for his adverse

credibility determination.  See Snell, 177 F.3d at 134 ("A reviewing court 'may not accept

appellate counsel's post hoc rationalizations for agency action.' ") (quotation omitted).

I respectfully recommend that the adverse credibility determination rendered by the ALJ

is not supported by substantial evidence, that the Commissioner's belated attempt to justify the

ALJ's adverse credibility finding is unpersuasive, and that this unsubstantiated credibility finding

impermissibly factored into the ALJ's decision to deny Plaintiff's application for disability

benefits.

E.    <u>Assignment to a Different ALJ</u>

Courts in this Circuit usually refrain from deciding whether a claimant's application for benefits should be assigned to a different ALJ upon remand.  <u>See</u>, <u>e.g</u>, <u>Hartnett v. Apfel</u>, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998).  On occasion, however, Courts have entertained whether "a fresh look by another ALJ [upon remand] would be beneficial[.]"  <u>Vicari v. Astrue</u>, 05 CV 4967 (ENV)(VVP), 2009 WL 331242, at *6 (E.D.N.Y. Feb. 10, 2009) (quotation omitted).  Courts making this assessment consider, *inter alia*, whether the ALJ has committed multiple legal errors, whether the ALJ has failed to fulfill his or her responsibilities following a remand order by the Appeals Council or by a federal court, and whether the ALJ has failed to consider and develop a claimant's complete medical history.  <u>Id.</u> (citing Second Circuit, Southern District, and Eastern District case law).

Although the undersigned perceives no overt bias or prejudice by the ALJ assigned to Plaintiff's case, the undersigned respectfully suggests that assignment of Plaintiff's application for benefits to a different ALJ to consider the Plaintiff's voluminous mental health documentation anew may be advantageous.  Although the Social Security regulations provide a mechanism for claimants to request the reassignment or recusal of an ALJ, <u>see</u> 20 C.F.R. §404.940, such a procedure would likely involve additional delay in the processing of the Plaintiff's application upon remand, <u>see</u> <u>id.</u> (requiring a claimant to notify the ALJ of his or her objection to the assignment of the ALJ in the first instance and allowing a claimant to raise this issue on appeal before the Appeals Council).  In light of the significant passage of time since the ALJ's second decision denying Plaintiff's application for benefits, and considering the limited

review conducted by the ALJ after the Appeals Council first remanded Plaintiff's application for further consideration, I respectfully recommend that Your Honor should entertain ordering that a new ALJ be assigned to review Plaintiff's application for disability benefits based upon her asserted mental impairment upon remand.  The long procedural history of this case suggests that a third review of Plaintiff's application for benefits might best be conducted by a different ALJ. See Ortiz v. Chater, 95 CV 3126 (ERK), 1997 WL 50217, at *3 n.1 (E.D.N.Y. Jan. 30, 1997) (noting that the decision to direct reassignment to a new ALJ upon remand was based upon the "feeling that, rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial.").

F.      Summary of Recommendations

        For the above stated reasons, I respectfully recommend that the ALJ failed to secure an adequate waiver from the Plaintiff of her right to representation at her second administrative hearing.  I respectfully recommend that this error augmented the ALJ's failure to develop the administrative record regarding Plaintiff's mental impairments under 20 C.F.R. §416.920a, and I therefore recommend that this case should be remanded to the Commissioner for further development of the administrative record.  I respectfully suggest that this case should be assigned to a different ALJ upon remand, and that the newly assigned ALJ should consider the degree and severity of the Plaintiff's mental impairments, including the lengthy documentation currently in the record postdating the documentary mental RFC relied upon exclusively by the ALJ in the second written decision as the sole basis for concluding that the Plaintiff did not suffer from any disabling mental limitation.

## **CONCLUSION**

For the aforementioned reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's motion for judgment on the pleadings, docket number 10, should be granted, and that the Commissioner's cross-motion for judgment on the pleadings, docket number 14, should be denied.  I respectfully recommend that this case should be remanded to the Commissioner for further development of the administrative record pursuant to sentence four of 42 U.S.C.§405(g) and that the Clerk of the Court should be directed to mark this case as closed.

## **NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: May 27, 2009
      White Plains, New York

                                        Respectfully Submitted,

                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

   The Honorable Kenneth M. Karas, U.S.D.J.

   Counsel of Record for Plaintiff and Commissioner of Social Security

30